UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHGIAN
SOUTHERN DIVISION

_____

**ALISON GAUDREAU,**

    Plaintiff,

Case No. 1:26-CV- 384

Hon. _____

v.

**MICHIGAN STATE UNIVERSITY** and
**KIM TOBIN,** in her official and personal capacity,

    Defendants.
_____

## COMPLAINT AND JURY DEMAND
_____

### COMPLAINT

Plaintiff Alison Gaudreau, by and through her attorneys, Pinsky Smith, PC, state as follows:

### JURISDICTION, VENUE, AND PARTIES

1.    This is an action seeking to remedy violations of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101 *et seq.* ("ELCRA").

2.    Jurisdiction and venue are proper in this Court. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

3. Plaintiff is a female individual who resides in Oakland County, Michigan. At all times relevant to this Complaint, Plaintiff was working within Ingham County, Michigan.

4. Defendant Michigan State University ("MSU" or "the University") is a public university located within Ingham County, Michigan, which does business in the Western District of Michigan, Southern Division.

5. Defendant Kim Tobin was and remains the Vice President of University Advancement at MSU. At all times relevant to this Complaint, Defendant Tobin worked within Ingham County.

6. The acts that are subject of this action occurred in Ingham County, Michigan.

7. Plaintiff worked as an Assistant Vice President in University Advancement for MSU from November 28, 2022 through her termination on January 17, 2025.

## FACTUAL ALLEGATIONS

8. Plaintiff began the position of Assistant Vice President in University Advancement for MSU in November 2022. She reported directly to Defendant Tobin, who began working at MSU only a few months prior. University Advancement's role is to cultivate and marshal the millions of dollars in private donations and fundraising which fund parts of MSU's programs, physical facilities and other capital assets, and operations.

9. Plaintiff's job duties included providing leadership for all aspects of the

operations in University Advancement which elevate MSU's donor experience through a strategic, collaborative and metrics-driven approach. Among her duties, Plaintiff served as the chief donor relations officer for University Advancement; provided leadership to and strategic oversight of programs, policies, processes, and the people who manage them; and worked collaboratively across central University Advancement and development teams embedded in various MSU departments to ensure a unified and consistent donor experience.

10. Defendant Tobin's first performance review of Plaintiff in September 2023 was generally glowing and overall "exceeds expectations." Defendant Tobin highlighted to Plaintiff that General Counsel Brian Quinn, MSU's chief in-house lawyer, specifically called Tobin to describe how highly he thought of Plaintiff's performance. The two areas marked as "developing" were communications and budget. The communication issue noted was that Dr. Tobin said that Ms. Gaudreau provided too many communication updates about a critical project, the "Spartan Strong" fund. Plaintiff, but not Defendant Tobin, had been selected to participate with members of other departments at MSU on this new fund after the widely-publicized MSU campus shooting in February 2023.

11. The budget issue noted on Plaintiff's September 2023 review was a reference that Defendant Tobin had charged Plaintiff with controlling costs on events that had large cost-overruns prior to Plaintiff's involvement, but Defendant Tobin did not communicate to Plaintiff that this was considered her fault or otherwise that it was being held against her on her performance review.

3

12. Most of the staff who reported to Defendant Tobin, including Plaintiff, found working for her very difficult. For example, in a car ride together returning from an event, Vivianne Robinson, Assistant Vice President of Operations at MSU, talked to Plaintiff about how frustrated Ms. Robinson was with Defendant Tobin's leadership, and how Ms. Robinson tried to navigate the difficulties in reporting to Defendant Tobin. Ms. Robinson was the Human Resources Department official who served the Advancement staff. Among multiple issues with her leadership, Defendant Tobin engaged in playing favorites among staff, and allowed poorly defined job duties to result in staff between teams to have overlapping and conflicting missions. She failed to resolve conflicts that inevitably arose, and she would push some initiatives – like cost-cutting measures – and then back off those immediately and indiscriminately when employees following her directions met resistance from other staffers at cross-purposes. As the HR official serving Advancement, Ms. Robinson was uniquely positioned to hear from upset employees, and she also experienced Defendant Tobin subjecting her, too, to some conflicting directives.

13. While working as an Assistant Vice President and reporting to Defendant Tobin, Plaintiff learned of reports of sexual harassment and/or discrimination by other employees by virtue of her supervisory position. As a result, Plaintiff had a duty to advise MSU's Office of Institutional Equity (OIE) of the claims by other employees.

14. Defendant Tobin specifically reprimanded Plaintiff for making one of

the mandatory reports to OIE after Plaintiff made her first such report in July 2024 related to an employee who worked in University Advancement. Defendant Tobin admonished Plaintiff in a conversation with Ms. Robinson that Plaintiff should have tried to work with Ms. Robinson first in an attempt to avoid reporting what Plaintiff learned to OIE. Defendant Tobin seemed unduly concerned that a report of sexual harassment coming out of the Advancement Department, even one which did not occur during her tenure, would reflect poorly on her. Ms. Robinson quickly corrected Defendant Tobin that Plaintiff had absolutely no duty to try to "work with" Ms. Robinson first to attempt to avoid making a report to OIE. Indeed, University rules are quite clear on the point that Plaintiff had a duty to report once she learned of the allegations. Plaintiff would have been in serious violation of MSU policy had she not reported to OIE.

15.     Nonetheless, Defendant Tobin unfairly harped on Plaintiff following her initial reprimand for Plaintiff's report to OIE about an Advancement employee who made a claim of sexual harassment. Defendant Tobin was constantly critical and retaliatory toward Plaintiff. Tobin began to falsely come up with pretextual reasons that she was allegedly dissatisfied with Plaintiff's work performance, claiming that Plaintiff's "leadership" and "communication skills" were suddenly inadequate, and questioning her "loyalty."

16.     Defendant Tobin took every possible opportunity to blame Plaintiff for anything she believed she could thereafter, even though there was no factual basis to Tobin's complaints. As one example, on August 12, 2024, Tobin required Plaintiff

5

to attend an in-person meeting to berate her about the new planning and budgeting process for events that Plaintiff had been charged with creating, even though Plaintiff advised Tobin that she had a doctor's appointment during the meeting time. Plaintiff attended the meeting as Tobin ordered, and Tobin proceeded to complain in general terms that Plaintiff was "derailing" and told Plaintiff had two weeks to "get it together." Tobin complained about Plaintiff's relationships with two other employees, Nick McLaren and Simone Clasen, as the new event planning process was being rolled out. Tobin did not seem to blame either Mr. McLaren or Ms. Clasen, who understandably tried to avoid participating in the new cost-control measures because doing so put one in the line of Tobin's fire. However, Mr. McLaren and Ms. Clasen were the other two unit leaders working on the same process to resolve the budget issues. Tobin did not provide any specifics to Plaintiff about what she wanted Plaintiff to fix, or why she was solely to blame for it, but merely berated her repeatedly and for days afterward. Tobin seemed poised only to be upset at Plaintiff for everything, and to expect only Plaintiff to do the impossible: fix the budget, but allow other departments to continue planning events that lacked a purpose or return on investment for the University.

17.    Defendant Tobin has a pattern of retaliating in this manner against her direct reports, being a difficult manager generally, engaging in cronyism in awarding contracts and in hiring, and protecting employees who she feels are blindly loyal, even where their transgressions are serious.

18.    Ms. Clasen was one of multiple employees and contractors that

6

Defendant Tobin brought with her from her prior position at Colorado State University. Inexplicably, Defendant Tobin hired and contracted with former co-workers, even paying their out-of-state commuting costs or having poorly defined contract missions, when that was unnecessary to engage the staff required for MSU's needs. Defendant Tobin's sister was another of her hires.

19. In late August 2024, Plaintiff reported to OIE a second complaint of which Plaintiff became aware, made by an Advancement staff member, of an incident of sexual harassment and/or discrimination.

20. Despite all of Defendant Tobin's berating and complaining, Tobin's September 2024 work evaluation of Plaintiff was still noted as satisfactory and "meets expectations." It would have been hard for Defendant Tobin to evaluate Plaintiff otherwise, since Plaintiff enjoyed an excellent reputation with her University partners and a very good track record of performance metrics.

21. On December 12, 2024, Plaintiff took her concerns about being targeted by Defendant Tobin and Tobin's continued retaliation toward Plaintiff to Marilyn Tarrant, MSU's Associate Vice President and Chief Audit, Risk and Compliance Officer. Plaintiff also reported concerns about Defendant Tobin's retaliation and general leadership to the General Counsel's office for MSU, the University's in-house legal team.

22. Defendant Tobin fired Plaintiff on January 17, 2025. The termination letter from Defendant Tobin and Ms. Robinson that they delivered to Plaintiff when they terminated her employment failed to provide a reason for the firing and relied

7

solely on Plaintiff's status as an at-will employee.

23. Upon information and belief, multiple employee complaints have been lodged against Defendant Tobin, and Plaintiff's termination without official explanation came very shortly before Plaintiff would have been interviewed as part of Defendant Tobin's 360-review. A great number of Plaintiff's University partners expressed significant shock at Dr. Tobin's firing of Plaintiff because of how pleased they were with Plaintiff's work.

24. Defendants' true reason for terminating Plaintiff was retaliation for her reports of violations or suspected violations of anti-discrimination laws to MSU's OIE and for her report of Defendant Tobin's unlawful retaliation.

## COUNT I – VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.* – RETALIATION

25. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

26. Defendants violated Title VII when Plaintiff was reprimanded and eventually terminated from her job position in retaliation for her complaints and reports of violations or suspected violations of anti-discrimination laws to MSU's OIE.

27. Defendants violated Title VII when Defendant Tobin made false claims that Plaintiff's leadership and communication skills were suddenly inadequate shortly prior to her termination, as a pretextual reason for the firing of Plaintiff.

28. Defendants violated Title VII when they terminated Plaintiff's

employment in retaliation for Plaintiff's December 2024 complaint about Defendant Tobin's conduct to Ms. Tarrant, Associate Vice President and Chief Audit, Risk and Compliance Officer at MSU, and to MSU's in-house legal department.

29. Defendants violated 42 U.S.C. § 2000e–3 when it terminated Plaintiff's employment and engaged in the other retaliatory acts as aforesaid.

30. Plaintiff has suffered irreparable harm, in that she was unlawfully e terminated as aforesaid, and will continue to suffer such harm unless the relief requested herein is granted.

## Statutory Prerequisites

31. Pursuant to 42 U.S.C. § 2000e–5(e), Plaintiff filed a charge of retaliation with the Equal Employment Opportunity Commission (EEOC).

32. EEOC advised Plaintiff by letter dated January 9, 2026, a copy of which is attached as **Exhibit 1**, that she was entitled to institute a civil action within 90 days of receipt of said letter, in accordance with 42 U.S.C. § 2000e–5(f)(1).

## COUNT II – VIOLATION OF ELCRA - RETALIATION

33. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

34. Defendants violated ELCRA when Plaintiff was reprimanded in retaliation for her complaints and reports of violations or suspected violations of anti-discrimination laws to MSU's OIE.

35. Defendants violated ELCRA when Defendant Tobin made false claims

that Plaintiff's leadership and communication skills were suddenly inadequate shortly prior to her termination, as a pretextual reason for the firing of Plaintiff.

36. Defendants violated ELCRA when Plaintiff's employment was terminated in retaliation for Plaintiff's December 2024 complaint about Defendant Tobin's conduct to Ms. Tarrant and to MSU's in-house legal department.

37. As a result of the foregoing, Plaintiff lost earnings and benefits and future earnings and benefits and suffered mental anguish, emotional distress, unfair reputational damage, and undue harm to her career, as well as incurred attorney fees, for which Defendants are liable.

**WHEREFORE**, Plaintiff requests that the Court grant the following relief for the Counts above: award Plaintiff economic and compensatory damages in an amount that would fully compensate her for the injuries alleged herein resulting from the violations of Title VII and ELCRA, including but not limited to her economic damages in the form of lost wages, damages for mental anguish, emotional distress, unfair reputational damage, and undue harm to her career; award Plaintiff exemplary and punitive damages, where applicable; award Plaintiff costs and reasonable attorney fees; award Plaintiff such other relief as may be just and equitable.

|  |  |
|---|---|
|  | PINSKY SMITH, PC<br>*Attorneys for Plaintiff* |
| Dated: February 5, 2026 | By: /s/ Sarah R. Howard<br>Sarah Riley Howard<br>146 Monroe Center St NW, Suite 418 |

             Grand Rapids, MI 49503
             (616) 451-8496
             showard@pinskysmith.com

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

             PINSKY SMITH, PC
             *Attorneys for Plaintiff*

Dated: February 5, 2026       By: /s/ Sarah R. Howard
             Sarah Riley Howard
             146 Monroe Center St NW, Suite 418
             Grand Rapids, MI 49503
             (616) 451-8496
             showard@pinskysmith.com